Jeffrey Francisco, Esq.
The Francisco Law Firm
*Attorneys for Ann Marie Duffy*
17 Market Street
Amsterdam, New York 12010

John B. Robeson, Esq.
Jason A. Brott, Esq.
Brott & Robeson
*Attorneys for Rick E. Skinner*
*and Barbara A. Saita*
2 South Market Street
Johnstown, New York 12095

Maxsen D. Champion, Esq.
Mark W. Swimelar, Esq.
*Office of the Chapter 13 Trustee*
250 South Clinton Street
Suite 203
Syracuse, New York 13202

Joshua P. Fleury, Esq.
Angela Z. Miller, Esq.
Phillips Lytle LLP
*Attorneys for American Tax Funding, LLC*
*and Optimum Asset Management, LLC as*
*Servicing Agent for Safe 2009*[1]
3400 HSBC Center
Buffalo, New York 14203-2887

*In Re: Ann Marie Duffy*
         Chapter 13 Case No.: 10-61918

         *Rick E. Skinner*
         Chapter 13 Case No.: 10-60798

         *Barbara Saita*
         Chapter 13 Case No.: 07-62404

**LETTER-DECISION AND ORDER**

American Tax Funding, LLC ("ATF") and Optimum Asset Management, LLC, as Servicing Agent for Safe 2009 ("Optimum") (collectively, "Creditors") seek an order

---

[1] Phillips Lytle LLP was substituted as counsel of record for these parties on or about March 2, 2011.

reconsidering and amending the Court's January 18, 2011 oral ruling ("Oral Ruling") and subsequent February 18, 2011 Order (the "Order") modifying the interest rate on certain claims filed by Creditors in the above-referenced Chapter 13 cases of Ann Marie Duffy, Rick E. Skinner, and Barbara Saita (collectively, "Debtors") from 24% to 12%.[2] The Court issued its Oral Ruling and Order after consideration of the parties' submissions and oral arguments on a question of first impression in this District: whether Creditors, as the holders of tax sale certificates purchased from the City of Amsterdam, New York, held "tax claims" under 11 U.S.C. § 511(a),[3] thereby entitling them to the rate of interest determined under New York law.[4] The Order sustained the objection of the Chapter 13 Trustee, Mark W. Swimelar, Esq. (the "Trustee"), to the claims filed by Creditors in each case. Creditors now seek reconsideration of the Court's Oral Ruling and Order pursuant to Rules 59(e) and 60(b)(6), made applicable to bankruptcy cases by Bankruptcy Rules 9023 and 9024, respectively.[5]

The Court has jurisdiction over these contested matters pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and (b)(1). These matters are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K), and (L). For the reasons set forth below, and under the specific circumstances of these three cases, the Court denies Creditors' motion in each case for reconsideration of the Order.

Familiarity with the factual allegations, procedural history, and the Court's Oral Ruling is assumed. Certain facts and background information relevant to reconsideration follow.

---

[2] Because these matters involved a determination of the identical issue, the Court consolidated the cases for purposes of oral argument, briefing, and decision.

[3] Absent contrary indication, all section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2010), all "Rule" references are to the Federal Rules of Civil Procedure, and all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure.

[4] Given its principal ruling that the claims held by Creditors did not qualify as "tax claims," the Court necessarily decided the secondary issue of what the appropriate interest rate would be to apply to the claims. Presently, Creditors narrowly argue that they are entitled to the protections of § 511, without separately addressing the interest rate applied by the Court under its contrary ruling. Thus, the Court's inquiry here is limited as well.

[5] To the extent required by Rule 52 and in accordance with subsection (b), made applicable to bankruptcy cases by Bankruptcy Rule 7052, this Letter-Decision and Order shall constitute the Court's amended findings of fact and conclusions of law.

As stated in the Trustee's original motion filed in each case to modify the subject claims, Debtors' respective proposed Chapter 13 plans and their Orders of Confirmation provided for payment of Creditors' claims without interest. Creditors' proofs of claim, in stark contrast, provided for 24% interest. In response to the Trustee's objection filed in each case to pay Creditors' claims at a significantly reduced interest rate in accordance with *Till v. SCS Credit Corporation*, 541 U.S. 465, 479 (2004) (holding that the "prime-plus" or formula approach best equates with the "present value" requirement of the Chapter 13 "cram down" bankruptcy provision for allowed secured claims codified in § 1325(a)(5)(B)(ii)), Creditors unsuccessfully argued that their claims were shielded by the anti-modification protections of § 511(a), which was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

Section 511(a) establishes a specific rate of interest on tax claims and thereby limits a debtor's ability to modify the interest rate on a tax claim in his Chapter 13 plan.[6] As the parties and the Court previously recognized, the paramount issue is whether Creditors, as tax sale certificate claimants, are holders of tax claims for purposes of § 511, rather than simply holders of tax liens or private liens. There is general agreement that state law controls to determine whether Creditors obtained tax claims when they purchased the tax lien certificates from the City of Amsterdam pursuant to a 2006 Purchase and Sale Agreement ("Agreement"). *See In re Bernbaum*, 404 B.R. 39, 43–44 (Bankr. D. Mass. 2009) ("[T]he bankruptcy court must refer to

---

[6] The full text of the statute reads:
**§ 511. Rate of interest on tax claims**
    (a)    If any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law.
    (b)    In the case of taxes paid under a confirmed plan under this title, the rate of interest shall be determined as of the calendar month in which the plan is confirmed.
11 U.S.C. § 511.

state law and may no longer use its equitable powers to alter the interest rate on a tax claim from the rate set forth under the applicable state law.").

In its prior ruling, however, the Court noted that while New York allows for the privatization of delinquent tax liens, its laws are much less comprehensive in comparison to those of other states. *See, e.g., Tax Ease Funding, LP v. Kizzee-Jordan (In re Kizzee-Jordan)*, 2009 U.S. Dist. LEXIS 89747 (D. Tex. Sept. 28, 2009) (third party transferees of tax claims are protected by § 511(a) because, under Texas law, they are subrogated to the rights of the taxing unit and take the government's secured and protected place), *aff'd* 626 F.3d 239, *In re Princeton Office Park, L.P.*, 423 B.R. 795 (Bankr. D. N.J. 2010) (under New Jersey law, a tax sale certificate holder is not the holder of a "tax claim" within the meaning of § 511(a) and, accordingly, the interest rate to be applied to the tax sale certificate would be calculated in accordance with *Till* rather than the tax sale certificate), *In re Cortner*, 400 B.R. 608 (Bankr. S.D. Ohio 2009) (tax lien transferees are protected under § 511(a) because, under Ohio law, the delinquent taxes that make up the certificate purchase price are transferred and the government's superior lien passes intact). To further complicate matters, the rules for tax lien sales within New York vary and some municipalities conduct independent sales pursuant to charter, administrative code, or special law. At the time of its initial ruling, the Court was not presented with the applicable municipal law governing the specific tax lien sale transaction between Creditors and the City of Amsterdam.

In the absence of a clear state law directive, the Court felt compelled to examine the post-sale treatment and rights of Creditors under New York law. In so doing, the Court rejected Creditors' argument that the Agreement itself should control given its explicit language that the buyer of the tax "shall have and possess the same powers and rights at law and equity as the City

and its municipal agents would have had if the Sold Tax Lien had not been sold." Instead, the Court premised its ruling on its ultimate conclusion that the rights and treatment of a holder of a tax sale certificate in New York differ substantially from those of the municipality holding the original tax claim. Specifically, the Court found as follows: (1) a tax lien purchaser must utilize the same foreclosure process available to mortgage holders under New York Real Property Tax Law § 1194 rather than the in rem proceeding available to government authorities under New York Real Property Tax Law § 1120, N.Y. REAL PROP. TAX LAW § 1120 (Consol. 2011); (2) a tax lien purchaser must record its interest to constitute a valid lien on the real property under New York Real Property Tax Law § 1190(3), *id.* § 1190; and (3) a tax lien purchaser is subject to subsequent tax lien certificates. In reaching its decision, the Court also considered in part the Montgomery County title abstract provided by the Trustee, which characterized the liens as "Open Private Party Liens [That] Have Been Transferred to [Creditors' counsel] for Foreclosure Proceedings," but which also indicated that the tax liens subject to the Agreement were "Open + Int." In doing so, the Court weighed the characterization of the liens as "private" more heavily than the status of the liens as "open."

In moving for reconsideration, Creditors assert that the Court's ruling and Order were based on clear errors of New York law and that the Court overlooked controlling decisions or data that might reasonably be expected to alter the outcome so as to justify relief under Rule 59(e). Specifically, Creditors argue three points to support their Rule 59(e) motion in each case: (1) the Court misconstrued New York's tax lien recording statute and must hold that neither the tax lien recording statute nor the Session Law require an assignment of a tax lien to be recorded in order to constitute a lien on real property; (2) the Court misapplied New York's general rule regarding the prioritization of tax liens and must recognize that the general rule is the most recent

taxes assessed against real property have the highest priority lien, regardless of whether the municipality or a third party is the holder of the tax lien; and (3) the Court too heavily weighed the fact that New York law provides specific foreclosure rights to tax lien purchasers that differ from those afforded to municipalities. Alternatively, Creditors argue that relief is warranted under Rule 60(b)(6) because they can demonstrate that "exceptional circumstances" exist, namely the Court's failure to consider a special act or session law known as Chapter 505 of the Laws of New York of 2006 ("Session Law") that admittedly was neither provided to the Court nor briefed by Creditors prior to the filing of their present motions for reconsideration in each case. Creditors likewise argue that the Court did not give due attention to the *Kizzee-Jordan* case, a § 511 case decided under Texas law. The Court will address each of these arguments in turn.

In response, the Trustee has filed opposition arguing, *inter alia*, that the Court's Oral Ruling and Order should be upheld as Creditors' motions for reconsideration in each case are merely an attempt to reargue the issues previously considered and properly decided by the Court. The Trustee asserts that Creditors' arguments should be raised on appeal rather than before this Court on reconsideration.

While Creditors move for relief under both Rules 59(e) and 60(b)(6), because they seek a substantial modification of the Court's Oral Ruling and Order, their request for reconsideration more squarely falls under Rule 59(e). *See* 12-59 Moore's Federal Practice – Civil § 59.05 (MB 2011) (comparing Rules 59(e) and 60). Generally, "reconsideration of a previous order is an extraordinary remedy, to be used sparingly in the interest of finality and conservation of judicial resources." 12-50 Moore's Federal Practice – Civil § 59.30 (MB 2011). Within the Second Circuit, a court may "alter or amend [a] judgment to correct a clear error of law or prevent

manifest injustice." *U2 Home Entm't, Inc. v. Lai Ying Music & Video Trading, Inc.*, 2005 U.S. Dist. LEXIS 20018 (S.D.N.Y. Sept. 12, 2005) (citing *Munafo v. Metro. Transit Auth.*, 381 F.3d 99, 105 (2d Cir. 2004)). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked–matter, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citing *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990); *Adams v. United States*, 686 F. Supp. 417, 418 (S.D.N.Y. 1988)).

Although the decision to grant or deny a Rule 59(e) motion is within the sound discretion of the court, "the motion should be granted only when the moving party can demonstrate that the Court overlooked controlling decisions or factual matters *that were put before it on the underlying motion* and which, had they been considered, would have changed its decision." *Citizens Against Casino Gambling v. Hogan*, 2008 U.S. Dist. LEXIS 67743, at *17–18 (W.D.N.Y. Aug. 26, 2008) (emphasis supplied); *accord U2 Home Entm't, Inc. v. Lai Ying Music & Video Trading, Inc.*, 2005 U.S. Dist. LEXIS 20018, at *2 (S.D.N.Y. Sept. 12, 2005). "[T]he moving party may not 'advance new facts, issues or arguments not previously presented to the Court.'" *U2 Home Entm't*, 2005 U.S. Dist. LEXIS 20018, at *3 (quoting *Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Maryland*, 768 F. Supp. 115, 116 (S.D.N.Y. 1991)); *accord Agritronics Corp. v. Nat'l Dairy Herd Ass'n*, 1994 U.S. Dist. LEXIS 14168, at *4 (N.D.N.Y. Sept. 22, 1994) (citing *Natural Res. Def. Council, Inc. v. United States Envtl. Prot. Agency*, 705 F. Supp. 698, 701–02 (D.D.C. 1989)). Accordingly, "[a] motion for reconsideration may properly be denied when it is used as a vehicle to attempt to cure deficiencies in earlier submissions that were found to be inadequate." *In re A & E Family Inv., LLC*, 2007 Bankr.

LEXIS 1703, at *6 (Bankr. D. Ariz. May 10, 2007) (citing *In re Negrete*, 183 B.R. 195, 197 (9th Cir. B.A.P. 1995)).

      Here, Creditors' position and likelihood of success turns on whether or not the Court may now consider the Session Law.  Even if the Court were to amend its prior decision, as it must, to hold that (1) a tax lien purchaser *may*–rather than *must*–record its interest to constitute a valid lien on the real property under New York Real Property Tax Law § 1190(3), meaning that recording is optional but not necessary for the assignment of a tax lien to be effective, and (2) tax lien recording rules are immaterial in deciding the present dispute because the tax lien in connection with the tax claim for the most recent tax year generally has priority over all tax liens of preceding years, subject to limited exceptions, pursuant to New York Real Property Tax Law § 912, N.Y. REAL PROP. TAX LAW § 912 (Consol. 2011), reconsideration would not be justified because the Court cannot now consider the Session Law, which was not introduced in the first instance and which supports Creditors' "tax claim" argument.  Further, the Court does not disagree with Creditors' argument that the fact that state law affords different foreclosure rights to tax lien purchasers and municipalities, standing alone, is insufficient to support the conclusion that the City of Amsterdam's sale and assignment of the tax liens to Creditors changed the very nature of the liens.  Unlike other courts that have decided this identical issue, however, this Court did not have any directly applicable New York law before it, and thus did not have any basis upon which to conclude that the sale and assignment in fact preserved the nature of the tax liens.  Under § 511(a), preservation of the tax claim is key.

      Absent the Session Law, the record does not provide a basis under nonbankruptcy law to invoke § 511.  Setting aside the Session Law momentarily, Creditors reargue that the Agreement itself should control.  The Court's reasoning for rejecting this argument in the first instance,

however, remains sound. The Agreement does no more than govern the tax sale transaction and the relationship between Creditors and the City of Amsterdam. It does not govern the relationship of Creditors and Debtors or of Creditors and Debtors' respective bankruptcy estates. As is clear from the language of § 511(a), the rights of Creditors as tax lien certificate holders in Debtors' respective bankruptcy estates are governed by the nonbankruptcy law controlling municipal tax lien sales to private parties, not by contract law. Further, without the benefit of the Session Law to compare the substantive rights rendered to Creditors by the Agreement, the Court cannot ensure that the Agreement itself complies and comports with the municipal law governing the tax sale transaction between Creditors and the City of Amsterdam.

Although the Session Law was clearly available to Creditors while the Trustee's claims objections were pending, the Session Law was not presented to the Court or relied upon by Creditors when they initially opposed the Trustee's motion in each case to modify their claims. Had it been submitted and considered in the first instance, the Court likely would have rendered a different decision after a complete analysis similar to that undertaken by the handful of courts that have addressed the rights of purchasers of tax sale certificates after BAPCPA's enactment of § 511. To allow Creditors to introduce the Session Law now, however, would be to give them the proverbial second bite at the apple after failing to meet their initial burden in proving their entitlement to the higher interest rate. Accordingly, Creditors' motion in each case does not provide a basis for reconsideration under Rule 59(e).

To the extent that Creditors' arguments under Rule 60(b)(6) also rely in large part upon the provisions of the Session Law and New York Real Property Tax Law § 1192, the latter of which is made applicable to the tax lien sale transaction between the City of Amsterdam and Creditors by virtue of the Session Law, they also must fail. Rule 60(b)(6) is a "catch-all"

provision that permits the court to grant reconsideration for reasons other than those set forth in the more specific clauses of Rule 60(b).  12-60 Moore's Federal Practice – Civil § 60.48 (MB 2011).  To prevail under Rule 60(b)(6), the movant must demonstrate that "extraordinary circumstances" exist that justify relief.  *Id.*; *see also In re Carlton Concrete Corp.*, 2008 U.S. Dist. LEXIS 74430, at *33 (E.D.N.Y. Sept. 26, 2008) ("Rule 60(b)(6) is reserved for only the most limited of circumstances.").  Case law looks specifically to whether the movant was at fault, making this the controlling factor, in determining whether extraordinary circumstances will be found or not.  *Id.*; *see also In re Teligent, Inc.*, 306 B.R. 752, "In the vast majority of the cases finding that extraordinary circumstances do exist so as to justify relief, the movant is completely without fault for his or her predicament; that is, the movant was almost unable to have taken any steps that would have resulted in preventing the judgment from which relief is sought."  12-60 Moore's Federal Practice – Civil § 60.48 (MB 2011).  Creditors cannot–and do not–argue that they are without fault here.  Rather, they acknowledge that they did not present or brief the Session Law in the first instance.  Therefore, the Court finds nothing extraordinary surrounding the facts of these cases to warrant use of its equitable powers under Rule 60(b)(6).

For the reasons set forth above, Creditors' motion for reconsideration of the Order in each case now before the Court is denied, and the Court's Oral Ruling is modified to the extent stated herein.

It is SO ORDERED.

Dated at Utica, New York
this 24th day of May 2011

                                                          /s/ Diane Davis
                                                         DIANE DAVIS
                                                         United States Bankruptcy Judge